UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

KAYLEEN LORRAINE BEDESKI,

                Plaintiff,

    -vs-

CAROLYN W. COLVIN, Commissioner
of Social Security,[1]

                Defendant.

No.    2:13-CV-0177-WFN

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT

      Before the Court are cross-Motions for Summary Judgment (ECF Nos. 18 and 19).
Attorney Dana Madsen represents Plaintiff.  Special Assistant United States Attorney
Franco Becia represents Defendant.  The Court has reviewed the administrative record and
briefs filed by the parties and is fully informed.

**JURISDICTION**

      Plaintiff protectively applied for child's insurance benefits and supplemental security
income benefits on October 14, 2010, alleging disability beginning on September 1, 2010.
The application was denied initially and on reconsideration.

      A hearing was held before Administrative Law Judge (ALJ) Marie Palachuk on
December 13, 2011.  At the hearing, Plaintiff, represented by counsel, testified as did
R. Thomas McKnight, Ph.D., a psychological expert, and Trevor Duncan, a vocational

---

[1]Carolyn W. Colvin became the Acting Commissioner of Social Security on
February 14, 2013.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure,
Carolyn W. Colvin is substituted for Michael J. Astrue as the defendant in this suit. No
further action need be taken to continue this suit by reason of the last sentence of 42
U.S.C. § 405(g).

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT - 1

expert (VE).   The ALJ concluded that Plaintiff was not disabled.   The Appeals Council denied Plaintiff's request for review making the ALJ's decision the final decision of the Commissioner.   Pursuant to 42 U.S.C. § 405(g), this final decision is appealable to the district court.   Plaintiff sought judicial review on May 13, 2013.

## FACTS

The facts of the case are set forth in detail in the transcript of the proceedings and are briefly summarized here.   Plaintiff was 20 years old at the time of the hearing. (Tr. at 62.)   Plaintiff graduated from high school and has never worked.   (Tr. at 63.) Plaintiff claims to suffer from a variety of physical and mental impairments.   Plaintiff claims to suffer pain in her back, rib cage, and knees, all of which limit her range of motion.   (Tr. at 63-65.)   Plaintiff appears to trace these injuries back to an incident when she was 8 weeks old and her abusive father broke several of her bones.   (Tr. at 63.) Plaintiff stated that she also suffers from depression, anxiety, and anger, for which she has sought counseling.    (Tr. at 65.)    Plaintiff has trouble sitting and standing for prolonged periods of time (Tr. at 64-65).   Despite her impairments, Plaintiff can use public transportation, (Tr. at 64), drive a car (Tr. at 66), and carry out household chores for 5-10 minutes at a time (Tr. at 66).   Plaintiff reports spending much of her time "sit[ting] around" or "hang[ing] out with friend[s]."   (Tr. at 67.)   Plaintiff is also in the process of writing a book.  (Tr. at 67.)

## SEQUENTIAL PROCESS

The Social Security Administration (SSA) has established a five-step sequential evaluation process for determining whether a person is disabled.    20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).   In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits.    *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).    This burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation.    20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).   If a claimant cannot do his past relevant work, the

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT - 2

ALJ proceeds to step five, and the burden shifts to the SSA to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs exist in the national economy which claimant can perform. *Batson v. Comm'r, Soc. Sec. Admin.,* 359 F.3d 1190, 1193-94 (9th 2004).   If a claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made.   20 C.F.R. §§ 404.1520(a)(4)(I-v), 416.920(a)(4)(I-v).

A person is entitled to disabled child's insurance benefits if the claimant is age 18 or older and has a disability that began before attaining age 22.   20 C.F.R. § 404.350(a)(5).

## ADMINISTRATIVE DECISION

Regarding Plaintiff's eligibility for child's insurance benefits, the ALJ determined that Plaintiff was born on August 9, 1991 and had not attained age 22 as of September 1, 2010, the alleged onset date.

At step one of the sequential process, the ALJ determined that Plaintiff did not engage is substantial gainful activity since September 10, 2010, the alleged onset date.

At step two, the ALJ found that Plaintiff had the following severe impairments: language related learning disorder.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments described at 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

At step four, the ALJ found that Plaintiff had the residual functional capacity (RFC) to perform a full range of work at all exertional levels subject to some limitations, including only superficial (non-collaborative) interactions with the general public and coworkers.  The ALJ further found that Plaintiff had no past relevant work.

At step five, the ALJ concluded that, given Plaintiff's age, education, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including laundry worker, small product assembler, and office cleaner.

**STANDARD OF REVIEW**

In *Edlund v. Massanari,* 253 F.3d 1152, 1156 (9th Cir. 2001), the court set out the standard of review:

> A district court's order upholding the Commissioner's denial of benefits is reviewed *de novo*. *Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000). The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. [*Tackett*, 180 F.3d at 1097]. Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.* 169 F.3d 595, 599 (9th Cir. 1999).

> The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett,* 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the ALJ did not apply the proper legal standards in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1988). If substantial evidence exists to support the administrative findings, or if conflicting evidence exists that will support a finding of either disability or non-disability, the Commissioner's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

**ISSUES**

1. Did the ALJ erroneous rely on the opinion of the medical expert when (1) the medical expert might not have reviewed all the medical evidence, and (2) the medical

expert made statements suggesting that it was difficult to diagnose teenagers with depression?

2.  Did the ALJ err in evaluating the medical evidence relating to Plaintiff's mental disorders?

## DISCUSSION

**1.  <u>Did the ALJ erroneous rely on the opinion of the medical expert when (1) the medical expert might not have reviewed all the medical evidence, and (2) the medical expert made statements suggesting that it was difficult to diagnose teenagers with depression?</u>**

Plaintiff argues that the ALJ erred in relying on the opinion of testifying medical expert, R. Thomas McKnight, Ph.D.  Plaintiff argues that Dr. McKnight's opinions were flawed for two reasons: (1) Dr. McKnight did not review the report and mental medical source statement written by John Arnold, Ph.D. and (2) Dr. McKnight made statements suggesting that he "would not identify depression in any young adult." (ECF No. 18 at 11.)

The Court finds no error in the fact that Dr. McKnight might not have thoroughly reviewed Dr. Arnold's evaluation.  Plaintiff points out that Dr. McKnight apparently did not review Dr. Arnold's mental medical source statement. (*See* Tr. at 59-60.)  It is not entirely clear from the transcript of the hearing whether Dr. McKnight had reviewed Dr. Arnold's report and/or mental medical source statement.   In response to the ALJ's questioning, however, Dr. McKnight assisted the ALJ in understanding "validity" of Dr. Arnold's testing, stated that he would have to "discount" Dr. Arnold's opinions, and questioned the "severe" functional limitations assessed by Dr. Arnold on the grounds that Plaintiff had a history of exaggerating her symptoms for "secondary gain." (Tr. at 58-59.) Even if Dr. McKnight failed to review Dr. Arnold's examination, the ALJ's reliance on Dr. McKnight's opinions was not in error.  Dr. McKnight addressed Dr. Arnold's report in his responses to the ALJ's questions and helped the ALJ make sense of the report.  As will be discussed *infra*, the ALJ provided her own reasons for rejecting Dr. Arnold's report and did not rely exclusively on Dr. McKnight's opinions in doing so.

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT - 5

The Court also finds no error in Dr. McKnight's statements about teenagers and depression.  Plaintiff argues that Dr. McKnight's testimony is "suspect" because he made some statements about how it is difficult to diagnose teenagers with depression. Specifically, Dr. McKnight testified:

> And [Plaintiff] may be depressed.  Teenagers are depressed.  Teenagers have adolescent angst.  They're angry.  They're withdrawn.  They're sullen.  They present histrionic kinds of behavior.  They're an interesting group of people. I'm glad I'm not one anymore.

(Tr. at 61.)  While several of Plaintiff's examining physicians and therapist diagnosed her with depression, the ALJ did not find that her depression rose to the level of a severe impairment.  The only severe impairment the ALJ found at Step 2 was "language related learning disorder."  (Tr. at 27.)  Plaintiff does not challenge the ALJ's Step 2 determination and does not point to substantial evidence in the record that would support a finding that Plaintiff's depression is a severe impairment. Because Plaintiff's depression is not at issue on this appeal, the Court finds no error in the ALJ's statements.

**2.  <u>Did the ALJ err in evaluating the medical evidence relating to Plaintiff's mental disorders?</u>**

"In making a determination of disability, the ALJ must develop the record and interpret the medical evidence." *Howard ex. rel. Wolff v. Barhart*, 341 F.3d 1006, 1012 (9th Cir. 2003).  In weighing medical source opinions, the ALJ should distinguish between three different types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) nonexamining physicians who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  The ALJ should give more weight to the opinion of a treating physician than to the opinion of an examining physician. *Orn v. Astrue,* 495 F.3d 625, 631 (9th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(1)-(2)).  The ALJ should give more weight to the opinion of an examining physician than to the opinion of a nonexamining physician. *Id.*

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT - 6

When a physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991) (quoting *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989)). When a physician's opinion is contradicted by another physician, the ALJ is only required to provide "specific and legitimate reasons" for rejecting the opinion of the first physician. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

### a. Christen Echelbarger, Ph.D.

Dr. Echelbarger examined Plaintiff on February 11, 2010. After psychiatric testing, Dr. Echelbarger opined that Plaintiff "experiences deficits and cognitive impairment in several important areas of her life that often result in maladaptive coping behaviors and distress." (Tr. at 263.) Dr. Echelbarger also opined that Plaintiff did not meet criteria for a psychotic disorder or Asperger's Disorder. (Tr. at 264.) Dr. Echelbarger diagnosed Plaintiff with "Borderline Intellectual Functioning" and "Major Depressive Disorder, Recurrent, Moderate, without Psychotic Features." (Tr. at 264.) Dr. Echelbarger recommended short-term and long-term therapy strategies to aid Plaintiff in "the management of her symptoms and life skills." (Tr. at 265-67.) Dr. Echelbarger also recommended that Plaintiff be evaluated for Fetal Alcohol Syndrome. (Tr. at 267.) Dr. Echelbarger noted that Plaintiff's "cognitive limitations create clear difficulties in many aspects of her daily functioning," but offered no opinion on Plaintiff's ability to work. (Tr. at 267.)

The ALJ did not directly discuss Dr. Echelbarger's report. The ALJ did, however, note that Dr. McKnight "disagreed with [Dr. Echelbarger's] diagnoses of major depressive disorder and borderline intellectual functioning, as [Dr. McKnight] cited a lack of observable depressive symptoms and the improper use of the WASI, a screening instrument, not the complete intelligence test in diagnosing borderline intellectual functioning."[2] (Tr. at 31; 52-53.) Plaintiff argues that Dr. McKnight's reliance on Dr.

---

[2]The ALJ noted that Dr. McKnight discussed a February 2010 "psychological diagnostic consultation," citing to Ex. 2F. (Tr. at 30.) Dr. Echelbarger's February 2010

Echelbarger's evaluation was in error because the report was made several months prior to September 1, 2010, the alleged onset date.

The Court agrees with Plaintiff that the relevance of Dr. Echelbarger's evaluation is diminished due to the fact that it was made six months prior to the beginning of the relevant period.  *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008) ("Medical opinions that predate the alleged onset of disability are of limited relevant.").  But the Court finds any error made by Dr. McKnight's discussion of Dr. Echelbarger's report harmless.  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (An error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination.").  Medical experts are tasked with reviewing the medical evidence that is provided to them.  Dr. McKnight discussed Dr. Echelbarger's report, as well as the reports of Dr. Dalley, Plaintiff's therapist at Family Service Spokane, and Dr. Arnold.  There is no indication that Dr. McKnight relied exclusively on Dr. Echelbarger's report to the exclusion of other medical evidence.  Furthermore, it does not appear that Dr. Echelbarger's February 2010 report factored into the ALJ's evaluation of the medical evidence.  Plaintiff fails to show that Dr. McKnight's reliance on Dr. Echelbarger's report was more than a harmless error.

### b.  Mahlon Dalley, Ph.D.

Dr. Dalley examined Plaintiff on August 25, 2010 and completed a psychological/psychiatric evaluation. (Tr. at 270-79.)  Dr. Dalley diagnosed Plaintiff with "Depressive Disorder NOS," "Rule Out Malingering," and "Borderline Intellectual Functioning."  (Tr. at 272.)  Dr. Dalley ultimately concluded that Plaintiff's mental health problems were not "severe enough to interfere with [her] ability to initiate and be successful in a normal employment position."  (Tr. at 279.)  Dr. McKnight criticized the testing underlying Dr. Dalley's diagnosis of borderline intellectual functioning and pointed out that Plaintiff's performance indicated that she was both grossly overstating pathology

---

report, however, is marked Ex. 1F, *not* Ex. 2F; the ALJ's citation to Ex. 2F appears to be a typographical error.

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT - 8

1    and grossly understating competence. (Tr. at 31; 55.)  The ALJ gave significant weight to

2    Dr. Dalley's opinion that Plaintiff had the ability to work. (Tr. at 33.)

3         Plaintiff argues that the ALJ erred in rejecting the opinions of Dr. Dalley. (ECF No.

4    18 at 11.)  But the ALJ did not reject Dr. Dalley's opinions.  The ALJ gave "significant

5    weight" to Dr. Dalley's opinion that Plaintiff's mental health problems were not "severe

6    enough to interfere with [her] ability to initiate and be successful in a normal employment

7    position."  (Tr. at 33; 279.)  Presumably, Plaintiff is arguing that the ALJ did not properly

8    credit Dr. Dalley's diagnoses of depression and borderline intellectual functioning.  It is

9    true that the ALJ did not credit, or give reasons for rejecting, these diagnoses.  But the

10   "mere diagnosis of an impairment . . . is not sufficient to sustain a finding of disability."

11   *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).  Dr. Dalley diagnosed Plaintiff with

12   depression and borderline intellectual functioning but concluded that these mental

13   impairments were not serious enough to preclude Plaintiff from working. The Court finds

14   no error in the ALJ's failure to discuss these diagnoses.  *See Howard*, 341 F.3d at 386 (ALJ

15   is not required to discuss evidence that "is neither significant nor probative.")

16        **c.  Rita Flanagan, Ph.D.**

17        Dr. Flanagan examined Plaintiff on March 6, 2011.  Dr. Flanagan diagnosed

18   Plaintiff with "Borderline Intellectual Functioning" and "Affective Disorders."  (Tr. at

19   111.)  Dr. Flanagan identified only mild and moderate limitations and ultimately

20   concluded that Plaintiff was "capable of competitive work over a normal workweek,

21   despite her depressive symptoms and learning difficulties."  (Tr. at 112.)  The ALJ gave

22   "significant weight" to Dr. Flanagan's opinions, finding them "generally consistent with

23   those of Drs. Dalley and McKnight."  (Tr. at 33.)  Plaintiff does not challenge the ALJ's

24   evaluation of Dr. Flanagan's report.

25        **d.  John Arnold, Ph.D.**

26        Dr. Arnold performed a psychological assessment on Plaintiff on November 23,

27   2011, after Plaintiff's attorney referred her to Dr. Arnold.  Dr. Arnold stated that the

28   purpose of the examination was to learn whether Plaintiff has "significant psychological

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT - 9

difficulties which thwart her ability to be gainfully employed." (Tr. at 404.)  Dr. Arnold administered several psychiatric tests.  The results of two of these tests "suggest[ed] over reporting of psychological problems," but Dr. Arnold concluded that the results were "interpretable, with caution."   (Tr. at 406.) Dr. Arnold diagnosed Plaintiff with "Cyclothymia, R/O Bipolar II," "Undifferentiated Somatoform Disorder," "Anxiety, NOS," "Dependent Personality Disorder with schizotypal, borderline, & paranoid features," and "Borderline Intellectual Functioning." (Tr. at 408.)  Dr. Arnold did not expressly conclude that Plaintiff was incapable of working.  But he did assess several severe and marked functional limitations that would essentially rule out employment.  (Tr. at 409-11; *see also* Tr. at 73 (VE opines that Plaintiff is unable to work with the limitations assessed by Dr. Arnold.))

The Court finds that the ALJ provided specific and legitimate reasons for rejecting Dr. Arnold's opinions.

First, the ALJ questioned Dr. Arnold's reliance on test results that Dr. Arnold concluded were "invalid" or interpretable "with caution" on account of, at least in part, Plaintiff's "over-reporting of psychopathology." (Tr. at 32; 406.)  Dr. McKnight testified that such test results are suspect and generally suggest an "overstating or understating [of a person's] pathology." (Tr. at 58.)  The ALJ may reject a medical opinion that is "inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).  Dr. Arnold's opinion was based on testing that Dr. Arnold himself admitted must be interpreted "with caution." (Tr. at 406.)   Dr. Arnold's reliance on questionable objective testing is a specific and legitimate reason for rejecting Dr. Arnold's opinions.

Second, the ALJ reasoned that Dr. Arnold's diagnoses were "inconsistent with the majority of objective evidence and the testimony of Dr. McKnight." (Tr. at 32.)  A medical expert's testimony is not substantial evidence to reject the opinion of a treating or examining medical provider. *Lester*, 81 F.3d at 831.  The ALJ may give weight to consulting opinions "only insofar as they are supported by evidence in the case record." *Id.*

In this case, however, Dr. McKnight's opinions concerning Plaintiff's impairments and ability to work are consistent with the opinions of other examining doctors. In particular, Drs. Dalley and Flanagan both opined that Plaintiff's impairments did not preclude her from working.  Inconsistency with the majority of objective evidence is a specific and legitimate reason for rejecting Dr. Arnold's opinions.  *Batson*, 359 F.3d at 1196.

Third, the ALJ reasoned that "Dr. Arnold[] did not review any additional evidence and very clearly relied too heavily upon [Plaintiff's] subjective complaints, which have been established to be less than credible."  (Tr. at 34; *see also* Tr. at 32 (ALJ finds Plaintiff "less than partially credible" and lists several incidents where Plaintiff faked or exaggerated symptoms and instances where Plaintiff's examining doctors suspected malingering).)  Plaintiff does not challenge the ALJ's credibility determination.  A doctor's opinion may be discounted if it relies on a claimant's unreliable self-report.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).  This is another specific and legitimate reason provided by the ALJ to reject Dr. Arnold's opinions.

### e.  Family Service Spokane

Plaintiff began attending therapy sessions through Family Service Spokane in September 2008.  The record contains therapy notes through August 2011.  Plaintiff's therapist was Mike Johnston, a social worker and mental health professional.

Generally, the ALJ should give more weight to the opinion of an acceptable medial source than to the opinion of an "other source," such as a therapist. 20 C.F.R. § 404.1513(d).  An ALJ is required, however, to consider evidence from "other sources," 20C.F.R. §§ 404.1513(d), 416.913(d); S.S.R. 06-03p, "as to how an impairment affects a claimant's ability to work," *Sprague*, 812 F.2d at 1232. An ALJ must give "germane" reasons to discount evidence from "other sources." *Dodrill v. Shalala*, 12 F.3d 915 (9th Cir. 1993).  Germane reasons to discount an opinion include contradictory opinions and lack of support in the record. *Thomas*, 278 F.3d at 957.

The ALJ did not discuss Plaintiff's therapy records at length, but did consider Plaintiff's reported "multiple personalities and associated audio hallucinations." (Tr. at 31.)

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT - 11

The ALJ gave little weight to these reported impairments because Dr. McKnight testified that objective testing did not indicate any presence of multiple personalities. (Tr. at 31, 56.) The ALJ did not discuss other observations and diagnoses made by Mr. Johnston. For instance, on September 29, 2009, Mr. Johnston diagnosed Plaintiff with "Mood Disorder" and "Psychotic Disorder." (Tr. at 349.) On October 19, 2010, Mr. Johnston diagnosed Plaintiff "Major Depressive Disorder, Recurrent, Moderate" and "Borderline Intellectual Functioning." (Tr. at 342.) Mr. Johnston made identical diagnoses on March 28, 2010 and April 5, 2011. (Tr. at 346; 400.)

The ALJ gave little weight to the opinions and conclusions of Mr. Johnston because he was not an acceptable medical source, the impairments were "only a recitation of Plaintiff's self-reported symptoms," and Mr. Johnston did not "witness the symptoms [or] in any other way substantiate the symptoms." (Tr. at 31.) These reasons, combined with Dr. McKnight's contradictory opinion and observation that Mr. Johnston's "diagnoses" are not supported by objective medical evidence, are germane reasons for giving little weight to the Family Service Spokane records. *Thomas*, 278 F.3d at 957.

The fact that the ALJ only discussed the records as they pertained to Plaintiff's complaints of "multiple personalities" and "audio hallucinations" is not legal error. The ALJ's reasoning for giving little weight to Mr. Johnston's conclusions is not exclusive to Plaintiff's alleged multiple personalities and audio hallucinations. Rather, the ALJ discounted the Family Service Spokane records as a whole for the reasons discussing above. *See* Tr. at 31 ("[T]he conclusions/opinions of the licensed social worker in Ex. 3F [(Tr. at 297-358)] are given little weight."). Furthermore, Mr. Johnston's "Mood Disorder" and "Psychotic Disorder" diagnoses (Tr. at 349) have little relevance because they were made almost a year prior to the alleged onset of disability. *See Carmickle*, 533 F.3d at 1165. The ALJ also did not err in disregarding Mr. Johnston's diagnoses of "Major Depressive Disorder, Recurrent, Moderate" and "Borderline Intellectual Functioning." (Tr. at 342.) These diagnoses were cumulative with the diagnoses made by Drs. Echelbarger, Dalley, Flanagan, and Arnold, which the ALJ adequately addressed. *See*

*Howard*, 341 F.3d at 386 (ALJ is not required to discuss evidence that "is neither significant nor probative.").

### CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and is not based on legal error.  Accordingly

**IT IS ORDERED** that:

1.  Defendant's Motion for Summary Judgment, filed February 18, 2014, **ECF No. 19**, is **GRANTED**.

2.  Plaintiff's Motion for Summary Judgment, filed January 6, 2014, **ECF No. 18**, is **DENIED**.

The District Court Executive is directed to file this Order and provide copies to counsel.  Judgment shall be entered for Defendant and the file shall be **CLOSED**.

**DATED** this 10th day of April, 2014.

    s/ Wm. Fremming Nielsen
WM. FREMMING NIELSEN
SENIOR UNITED STATES DISTRICT JUDGE

04-09-14

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT - 13